UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

       Plaintiff,

                                        Case No. 1:06-cr-21

v.

                                        HON. GORDON J. QUIST

LUTHER JOHN WADE, JR.,

       Defendant.

_____/

## OPINION

Defendant Luther John Wade, Jr. ("Wade") was indicted for 1) possession with intent to distribute 5 grams or more of a substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and 2) possession with intent to distribute a quantity of a substance containing a detectable amount of powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The drugs that the government alleges Wade possessed with intent to distribute were discovered during the execution of a search warrant upon the residence at 1705 N. Westnedge Ave., Kalamazoo, Michigan, in which Wade lived. Wade moves to suppress the drugs and other evidence seized from this residence, arguing that "the affidavit presented for the issuance of the warrant contained insufficient particularized facts from which the issuing magistrate could find a substantial basis for probable cause." Wade further argues that the good-faith exception does not apply because the affidavit in support of the search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." For the following reasons, the Court will deny Wade's motion to suppress.

## I. Findings of Fact

The affidavit presented in support of the warrant provided as follows:  On September 7, 2004, Officer Zapata initiated a drug investigation at 1705 N. Westnedge because he "received Intelligence Information regarding drug activity occurring at 1705 N. Westnedge . . . ."  (Zapata Aff. ¶ 3.B.)  In particular, on January 25, 2004, an anonymous caller told officers that 1) Wade is selling lots of drugs, 2) there is crack and marijuana in his house now, 3) Wade is on parole for drugs, and 4) there is "lots of traffic."  On March 22, 2004, an anonymous caller told officers that "[he] sells major amounts of drugs from his house."  (*Id*. ¶¶ 3.F.,G.,H.)  In researching Wade's criminal history, officers discovered that Wade had three prior felony convictions for drug-related crimes as well as one prior misdemeanor conviction for possession of marijuana. (*Id*. ¶ 3.K.)  Officers further discovered that, as of September 7, 2004, the Secretary of State showed Wade's address as being 1705 N. Westnedge.

On September 7, 2004, in investigating possible drug activity at 1705 N. Westnedge, officers observed a trash container at the curbside directly in front of the residence.  (*Id*. ¶ 3.C.) The officers noticed that, because of the amount of trash in the container, the trash container's lid could not completely shut.  (*Id*.)  The officers decided to initiate a "Trash Pull" and secured four black plastic trash bags from the trash container.  (*Id*. ¶¶ 3.C. & D.)  In searching these trash bags, officers discovered "loose marijuana."  (*Id*. ¶ 3.D.1.)

Based upon the facts presented in the affidavit, Officer Zapata sought a search warrant for 1705 N. Westnedge from Michigan Magistrate Judge Robert Kropf at approximately 7:00 p.m. on September 7, 2004.  Judge Kropf signed the warrant at 7:59 p.m., and Kalamazoo Public Safety officers executed it at approximately 9:25 p.m.  During the execution of this search, officers discovered crack cocaine, marijuana, nearly four thousand dollars, digital scales, and packaging materials.

## II.  Analysis

**A.     Sufficiency of Affidavit in Establishing Probable Cause**

For purposes of determining whether an affidavit is sufficient to support a finding of probable cause, the Supreme Court has instructed "that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983).  Rather, the Court continued, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.* (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 590 (1969)).  Thus, the Court concluded, so long as a magistrate, in considering the totality of the circumstances, had a substantial basis for concluding that there was a "fair probability that contraband or evidence of a crime [would] be found in a particular place," then the magistrate's finding of probable cause should not be disturbed, for "the Fourth Amendment requires no more." *Id.* at 236, 238, 103 S. Ct. at 2331-32.  Furthermore, the Court explained, when an affidavit in support of a search warrant is based upon an informant's statements, a court should consider the informant's veracity, reliability, and basis of knowledge, as they "may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that [evidence of wrongdoing] is located in a particular place." *Id.* at 230, 103 S. Ct. at 2328.

In support of his position that the affidavit failed to provide the magistrate with a substantial basis to conclude that a fair probability existed that evidence of criminal wrongdoing would be found at 1705 N. Westnedge, Wade contends that this Court should accord the anonymous tips no weight in support of a finding of probable cause.  Wade first argues that the anonymous tips, which were given over seven and five months prior to the execution of the warrant, were stale.  In addition, Wade notes, there is no indication in the affidavit as to the basis

3

of knowledge of the caller's (or callers') tips.  Moreover, Wade argues, the reliability of the caller(s) is suspect, for the tips were not rich in relevant detail.  Not only does the affidavit fail to support a finding of probable cause on the basis of the anonymous tips, Wade continues, but the affidavit also fails to support a finding of probable cause because there is no indication that the officers corroborated the tips' assertions.  For instance, while the caller claims that there was "lots of traffic" to the house, which, if true, would tend to support a finding or probable cause since drug houses are commonly frequented by heavy traffic, there is no indication in the affidavit that the officers conducted surveillance and observed an unusual amount of traffic at the house.  While officers discovered "loose marijuana" in the trash container on the curb in front of 1705 N. Westnedge, Wade maintains that this does not sufficiently corroborate the anonymous tip that Wade either "sells major amounts of drugs from his house" or that he had "crack and marijuana in his house" on September 7, 2004.  For instance, Wade notes, there was no indication in the affidavit that the officers, in searching through Wade's garbage, discovered materials, such as zip lock bags or cellophane wrap with drug residue on them, which would be indicative of drug trafficking as opposed to merely the use of drugs.  Finally, Wade asserts, the affidavit fails to sufficiently connect the garbage container in which the "loose marijuana" was found with Wade or 1705 N. Westnedge, as there is no indication in the affidavit that officers discovered anything in the garbage either with Wade's name or the 1705 N. Westnedge address on it.

In addressing Wade's arguments, the Court first notes that while it does not find that the anonymous tips were necessarily stale, the Court agrees with Wade that the anonymous tips nonetheless do not provide significant support for the finding of probable cause.  In finding that the tips were not necessarily stale, even though they were made over seven and five months prior

4

to the execution of the search warrant, the Court relies upon *United States v. Hammond*, 351

F.3d 765 (6th Cir. 2003).  In *Hammond*, officers, in seeking a search warrant, relied upon a four-

month old tip that alleged that Hammond had an indoor marijuana grow operation on his

property.  *Id*. at 768.  In appealing the district court's denial of his motion to suppress, Hammond

argued that the tip relied upon by the officers was stale.  *Id*. at 771.  The court recognized that

"[a] determination of whether an informant's tip is stale rests on several factors including:

> [T]he character of the crime (chance encounter in the night or regenerating
> conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized
> (perishable and easily transferable or of enduring utility to its holder?), [and] the
> place to be searched (mere criminal forum of convenience or secure operational
> base?).

*Id*. (quoting *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001)).   The court

concluded that the informant's tip was not stale because "the crime of drug trafficking is

ongoing, the defendant's location is established, the drugs were likely to be there for an

indefinite period of time, and the place to be searched constituted a secure operational base." *Id*.

at 772.  In this case, the anonymous tips provided that crack and marijuana was in Wade's house

and that Wade sells "major amounts of drugs from his house."  These anonymous tips were not

necessarily stale for, as in *Hammond*, "the crime of drug trafficking is ongoing, [Wade]'s

location is established, the drugs were likely to be there for an indefinite period of time, and the

place to be searched constituted a secure operational base."[1]

Although the tips were not stale, they nonetheless are not entitled to significant weight in

support of a finding of probable cause.  The Sixth Circuit has explained that anonymous tips,

---

[1]

   The Court recognizes that the conduct alleged in *Hammond*, the operation of an indoor marijuana grow operation,
is potentially of a more indefinite nature than the conduct alleged here, the selling of drugs from a house.  This, however,
does not alter the Court's finding that the tips, which alleged that Wade sold major amounts of drugs from his home,
were not stale.

unlike information provided by a confidential informant who has a proven track record of reliability, "demand more stringent scrutiny of their veracity, reliability, and basis of knowledge . . . ."  *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003).  In this case, the affidavit provides no basis to discern the anonymous tipster's basis of knowledge.  From the affidavit, the magistrate could not have known, for instance, whether the caller had been in the house and saw drugs there or whether the caller heard that drugs were there from yet another unidentified individual.  Moreover, the tips lacked any relevant detail, such as the amount of drugs in the house or where the drugs were stored.  *See United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993) (noting that, given the anonymous tip's lack of relevant detail, "[t]here was little in the affidavit that provided indicia of the caller's reliability").  Finally, the Court agrees with Wade that the officers' failure to corroborate the assertion that "lots of traffic" frequents Wade's residence, an assertion that could have been readily corroborated, further detracts from a finding of probable cause.

The anonymous tips, however, may not be viewed in isolation.  Rather, the magistrate's obligation in determining whether to issue a warrant is to consider whether the totality of the circumstances presented in the affidavit support a finding of probable cause.  In considering the totality of the circumstances, precedent indicates that the drugs found in the trash bin on the curbside in front of 1705 N. Westnedge, in consideration with the anonymous tips, provided a substantial basis for the magistrate to conclude that a fair probability existed that evidence of criminal wrongdoing would be found at the residence.

In *United States v. Lawrence*, 308 F.3d 623 (6th Cir. 2002), officers received a tip from an informant relating to the defendant's drug-related activities.  Several months later, officers "noticed a trash container placed for collection on a utility strip between the street and sidewalk"

by the defendant's home.  *Id*. at 626.  In examining the trash in the container, "the officers

discovered plastic bags containing wrappers with cocaine residue."  *Id*.  Based upon this

information, the officers obtained a warrant to search the defendant's home.  *Id*.  Upon executing

the warrant, officers discovered powder and crack cocaine, $23,000 in cash, and several

firearms.  *Id*.  The defendant moved to suppress the evidence discovered during the search.  *Id*.

The district court denied the motion.  On appeal, the defendant argued that the court erred "by

not allowing Victoria Nolan to testify in support of his suppression motion."  *Id*. at 626-627.

The court noted that "Nolan, who had provided the police with information relied on in obtaining

the search warrant for [the defendant]'s home, asserted her right against self-incrimination at the

suppression hearing."  *Id*. at 627.  The court rejected the defendant's argument, explaining that

the "district court correctly noted that, even if Nolan's statements were excised from the search

warrant affidavit, the remaining information obtained through the search of Lawrence's trash

supplied sufficient probable cause for the search warrant."  *Id*.

Similarly, in this case, the marijuana found in the trash container on the curb in front of

1705 N. Westnedge, in consideration with the anonymous tips, provided a sufficient basis for a

magistrate to conclude that probable cause existed to search the residence.[2]  *See e.g.*, *United*

*States v. Briscoe*, 317 F.3d 906, 907-908 (8th Cir. 2003) (holding that "marijuana seeds and

---

[2]

The Court notes that not every court that has addressed this issue has reached the same conclusion.  In *United States v. Elliott*, 576 F. Supp 1579, 1581 (S.D. Ohio 1984), the district court suppressed evidence discovered during the execution of a search warrant on the ground that the discovery of "partially smoked marijuana cigarettes and several stems from marijuana stalks" in the defendant's garbage was insufficient, standing alone, to establish probable cause because the evidence discovered in the garbage was "merely the waste product of past marijuana use" and did not render the continued presence of marijuana in the defendant's house probable.  The Court notes that the district court issued this opinion in January 1985, six months before the Supreme Court decided *United States v. Leon*, 468 U.S. 897, 104 S. Ct 3405 (1984), and, thus, did not have the opportunity to consider whether the evidence discovered during the execution of the search warrant should nonetheless not have been suppressed pursuant to the *Leon* good-faith rule.

stems recovered from Briscoe's garbage were independently adequate to establish probable cause"); *United States v. Hohn,* 8 F.3d 1301, 1306 (8th Cir. 1993) (holding that a tip implicating Hohn as a methamphetamine dealer distributing from his home and the discovery in Hohn's garbage of a zip-lock bag and sno-seals, which are folded paper used to hold powdered substances such as methamphetamine, was sufficient to establish probable cause to search his residence).

Wade argues that the loose marijuana discovered in the trash container was not indicative of drug trafficking as opposed to merely drug use and, therefore, that the marijuana discovered does not support the conclusion that drugs probably would still be in his home. This argument does not persuade the court that a substantial basis did not exist for the magistrate to conclude that a fair probability existed that evidence of criminal wrongdoing would be found in Wade's home. In *United States v. Scott*, No. 1:05-cr-173, 2005 WL 2436455 (W.D. Mich Oct. 3, 2005), the district court denied a defendant's motion to suppress where officers submitted an affidavit indicating that they discovered two gallon size Ziploc bags with marijuana residue on them and a large piece of cellophane wrap with "marijuana residue all over it." The affidavit further provided that "Ziploc bags were used by drug dealers to store one pound increments of marijuana and that large cellophane wrap was 'consistent with the way marijuana suppliers wrap large quantities/bricks of marijuana for transport.'" *Id*. at *1 (quoting the affidavit). While the evidence discovered in *Scott* was indicative of drug dealing rather than solely drug use, drugs discovered in a defendant's trash need not necessarily point to drug dealing for probable cause to be found. For instance, in *Lawrence*, the court found that the discovery of plastic bags containing wrappers with cocaine residue on them was sufficient to create probable cause, and the existence of plastic bags containing wrappers with cocaine residue on them does not

8

necessarily indicate drug dealing rather than simply drug use.  *See  Briscoe*, 317 F.3d at 908 (discovery of marijuana seeds and stems were independently adequate to establish probable cause).

Finally, Wade argues that probable cause does not exist because the affidavit did not establish that the trash container in which the marijuana was found was "connected to the residence in any way." (Def.'s Reply Br. at 6.)  As noted above, in determining whether to issue a warrant, a "magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332.  In this case, the affidavit provides that officers discovered marijuana inside trash bags that had been placed inside a trash container that rested near the curbside in front of 1705 N. Westnedge.  Since the drugs were found inside the trash bags, it is highly unlikely that they were discarded into the trash container by someone walking past it.  Moreover, a magistrate, in making a practical, common-sense decision, could easily conclude that the trash in a trash container that sits in front of a house in fact comes from that house. *See United States v. Fisher*, 33 F. App'x 933, 937-38 (10th Cir. 2002) (rejecting a defendant's argument that probable cause did not exist where officers discovered  methamphetamine in a trash container outside the defendant's residence on the ground that the drugs "could have come from somewhere other than" his residence, because, given "that the probable cause inquiry is a practical, common-sense one," it was not unreasonable for "officers to rely on the testing of items of trash on the curb outside [a] suspected residence").

**B.      Good-Faith Exception**

Even if the Court were to conclude that the affidavit in support of the search warrant was insufficient to establish probable cause to search the residence at 1705 N. Westnedge, the Court concludes that the evidence seized in this case would still not be suppressed due to the *Leon* "good-faith" exception. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984). Though evidence obtained in violation of the Fourth Amendment is generally excluded, the Supreme Court held in *Leon* that the exclusionary rule "should . . . not . . . bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id*. at 905, 104 S. Ct. at 3411. This is so, the Supreme Court explained, because the purpose of the exclusionary rule, which is to deter police misconduct, will not be served by excluding evidence seized by an officer acting in good faith. *Id*. at 916, 104 S. Ct. at 3417. In determining whether an officer acted in good-faith, the "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. at 923 n.23, 104 S. Ct. at 3420 n.23. Thus, an officer would not "manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. at 923, 104 S. Ct. at 3421. However, to establish a *Leon* good faith reliance, the government has "a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place," for otherwise the "exception would be devoid of substance." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004).

The Court concludes that the affidavit in this case was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Since probable cause existed in *Lawrence* based solely upon the discovery in the defendant's garbage of plastic

10

bags containing wrappers with cocaine residue on them, and since, to demonstrate an officer's good-faith reliance upon a magistrate-issued warrant, the government has a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place, it follows that a reasonably well-trained officer could conclude that an affidavit that provides that officers received anonymous tips indicating that an individual with a history of drug convictions was selling a major amount of drugs from his home and that marijuana was found in this individual's garbage was sufficient to establish probable cause to search his home. *See United States v. Koons*, 300 F.3d 985, (8th Cir. 2022) (affirming denial of motion to suppress, without deciding whether probable cause existed, on the ground that officers acted in objective good faith upon a warrant issued pursuant to an affidavit that provided only that officers received a tip that Koons was dealing in drugs and that numerous marijuana stems were discovered in Koons' trash).

Moreover, even if the Court were to accept Wade's argument that probable cause did not exist in this case because the affidavit failed to connect the garbage container in which the marijuana was found with 1705 N. Westnedge, the Court would nonetheless not suppress the evidence discovered during the search because an officer could have reasonably concluded that the affidavit sufficiently demonstrated a nexus between the residence and the garbage container. In *Carpenter*, the court held that an affidavit, which provided that marijuana plants were growing near a residence and that there was a road connecting the residence and the marijuana plants, "contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity . . . ." 360 F.3d at 596. In this case, the affidavit provided that the trash container, in which the marijuana was discovered, was located on the curb in front of 1705 N. Westnedge.  Since it is a commonly

11

accepted practice and understood that people put out their own garbage in front of their own homes, the nexus between the illegal activity and the place to be searched here is even greater than that in *Carpenter*.

### III.  Conclusion

Because the Court concludes that the affidavit presented in support of the search warrant provided the magistrate with a substantial basis for concluding that a fair probability existed that contraband would be discovered at 1705 N. Westnedge, and because, even if the affidavit did not provide the magistrate with a substantial basis for concluding that a fair probability existed that contraband would be discovered there, the affidavit was nonetheless not so lacking in indicia of probable cause such as to render official belief in its validity entirely unreasonable, the Court will deny Wade's motion to suppress.

An order consistent with this opinion will be entered.


Dated:  September 7, 2006                              /s/ Gordon J. Quist
                                                                GORDON J. QUIST
                                                                UNITED STATES DISTRICT JUDGE