UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.

      Case No. 1:06-cr-21

      HON. GORDON J. QUIST

LUTHER JOHN WADE, JR.,

      Defendant.

_____/

**OPINION**

Defendant Luther John Wade, Jr. ("Wade") was indicted for 1) possession with intent to distribute 5 grams or more of a substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and 2) possession with intent to distribute a quantity of a substance containing a detectable amount of powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The drugs that the government alleges Wade possessed with intent to distribute were destroyed by the Kalamazoo Department of Public Safety ("KDPS"), pursuant to department policy, after the Kalamazoo county prosecutor decided not to file charges and before the federal indictment of Wade.

Wade moved for dismissal of the charges because "the physical evidence thought to have been held by the government has apparently, at a time past, been destroyed and is no longer available to the defendant, the Court, or a jury." Wade argues that the "acknowledgment that the destruction was done intentionally and with a conscious decision raises a substantial issue of constitutional due process proportions." Wade alternatively seeks a jury instruction on spoliation of evidence. For the following reasons, the Court will deny Wade's motion for relief.

## I. <u>Findings of Fact</u>

The government brought charges against Wade in January 2006 based on a September 7, 2004, arrest of Wade and seizure of evidence by KDPS officers. The seized evidence consisted of suspected drugs and related paraphernalia. Following the seizure of evidence, the officers sent the suspected drugs to the Michigan State Police Forensic Laboratory, which identified the suspected drugs as marijuana and crack cocaine. (Tr. Mot. Hr'g, Aug. 18, 2006, at 7.) After the testing, the drugs and other evidence were returned to the KDPS. A fingerprint from one of the bags containing crack cocaine was sent to the Kalamazoo Forensic Science Laboratory but was not immediately identified.

In January 2005, the Kalamazoo county prosecutor's office decided not to prosecute Wade, although the prosecutor made a note that he would reconsider this decision if certain further investigation was done. (*Id*. at 64.) Sometime in the summer of 2005, federal prosecutors began to consider filing charges based on the arrest.

KDPS policy authorized the destruction of evidence once a final disposition is entered in a case. In August 2005, KDPS secretary Stephanie Ebinger, as part of her duties and in accordance with department policy, marked the evidence in this case for destruction. Ebinger was aware of the prosecutor's decision not to issue a warrant, which, from her good faith perspective at that time, constituted a final disposition of the case, and she, in good faith, believed that the evidence was no longer needed and could be destroyed. Although Ebinger obtained the formal authorization from her supervisor to destroy the evidence, she did not follow the informal policy of speaking to the KDPS officer in charge of the case, who knew that the case was still under evaluation for possible charges by either the Kalamazoo prosecutor or federal prosecutors. (*Id*. at 68-70, 72.) The drugs and drug paraphernalia were destroyed in accordance with KDPS policy by August 30, 2005.

The Kalamazoo Forensic Science Laboratory matched the fingerprint taken from the bag of cocaine to Wade in September 2005. (*Id*. at 31.) In October or November of 2005, the case was presented to the United States Attorney's office, and a grand jury subsequently indicted Wade in January 2006. The government did not learn that the evidence was destroyed until late May or early June 2006, following Wade's request to view the evidence. The evidence that the government turned over to Wade consisted of the lab reports identifying the substance as marijuana and crack cocaine, the reports of the arresting officers, photographs of the destroyed drugs and drug paraphernalia, the fingerprint, and the lab results matching the fingerprint from the cocaine bag to Wade. (*Id*. at 33-34.)

## II. Conclusions of Law

**A.     Dismissal of the Case for Due Process Violations**

The Supreme Court addressed the prerequisites for the dismissal of a case based on the government's destruction of evidence in *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333 (1988). The government relies on *Youngblood* as the foundation for its argument that dismissal is not warranted in this case. The *Youngblood* Court distinguished between exculpatory evidence and "potentially useful" evidence and established that when dealing with a state's failure to preserve "potentially useful" evidence, a criminal defendant must show "bad faith" to maintain a due process claim. As recognized by the Sixth Circuit, *Youngblood* requires that the defendant show:

> (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (citing *Youngblood*, 488 U.S. at 57-58, 109 S. Ct. at 337-38).

*Youngblood* involved the sexual assault of a child. The state failed to adequately preserve the child's clothing which, it was later discovered, contained various fluid samples from the perpetrator. By the time the samples were discovered, they were no longer testable due to the state's failure to properly maintain the clothing. The state did not use the evidence in its case in chief. At trial, both the state and defendant presented experts to testify as to what might have been obtained from the clothing had the fluids been in a testable condition. The trial court gave the jury a spoliation instruction, informing "the jury that if they found the State had lost or destroyed evidence, they might 'infer that the true fact is against the State's interest.'" (*Youngblood*, 488 U.S. at 54, 109 S. Ct. at 335) The *Youngblood* Court characterized the destroyed evidence as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." (*Id*. at 57, 109 S. Ct. at 337)

The government also points to a Supreme Court case in which the police, pursuant to department policy, destroyed the drug evidence obtained during defendant's arrest even though the prosecutor was on notice that defendant requested access to the evidence. *Illinois v. Fisher*, 540 U.S. 544, 124 S. Ct. 1200 (2004). The defendant in *Fisher* was arrested and charged with possession of cocaine in 1988, and his attorney promptly requested "all physical evidence the State intended to use at trial." *Id*. at 545, 124 S. Ct. at 1201. The defendant failed to appear in court and remained a fugitive for ten years. After authorities located and arrested the defendant in 1998, the drug charge was reinstated. However, the drugs had been destroyed by the police, pursuant to department policy, approximately two months before the charges were reinstated. Upon learning of the destruction, the defendant then formally requested production of the evidence and filed a motion to dismiss the drug charge based on the destruction of the evidence.

The *Fisher* Court determined that the "substance seized from respondent was plainly the sort of 'potentially useful evidence' referred to in *Youngblood*," rather than "material exculpatory evidence." *Id*. at 548, 124 S. Ct. at 1202.  The Court characterized the evidence as "potentially useful" rather than exculpatory because lab results still existed from tests conducted on the substance, which positively identified the substance as cocaine, so that, "[a]t most, respondent could hope that, had the evidence been preserved, a *fifth* test conducted on the substance would have exonerated him."[1] *Id*.  Additionally, defendant did not allege, nor did the appellate court find, that the police acted in bad faith.  The police destroyed the evidence in good faith according to policy and without any knowledge that it was exculpatory, because, as the Court pointed out, "police testing indicated that the chemical makeup of the substance inculpated, not exculpated," the defendant. *Id*.  The Court also rejected the defendant's contention that "*Youngblood* does not apply whenever the contested evidence provides a defendant's only hope for exoneration and is essential to and determinative of the outcome of the case." *Id*. (internal quotation marks omitted).  The Court framed the central question regarding *Youngblood*'s application as whether the evidence was "'material exculpatory' evidence" or "'potentially useful' evidence." *Id*. at 549, 125 S. Ct. 1203.  *See also*, *Henry v. Page*, 223 F.3d 477 (7th Cir. 2000).

In the present case, Wade fails to meet the criteria for dismissal established by *Youngblood*.  There is no evidence that Kalamazoo acted in bad faith when it destroyed the evidence.  The evidence was destroyed pursuant to a department policy providing for the destruction of evidence once there is a final disposition of a case.  At the time the evidence was destroyed, the persons

---

[1] Although the Court emphasized "fifth," the Court gave no indication that the number of tests previously conducted formed the basis for its decision, rather than being emphasized merely for effect.

5

responsible for the destruction were not aware that the case was being considered for federal prosecution. It appeared to Ebinger that there was a final disposition in the case and that it was proper to destroy the evidence. The evidence destroyed by Kalamazoo is inculpatory rather than exculpatory, and there is no evidence that Kalamazoo believed the evidence to be exculpatory prior to its destruction. At best, Wade could have hoped that another test on the substances might have exonerated him. The fingerprint allegedly linking Wade to the controlled substance and paraphernalia still exists, as do photographs of the destroyed evidence. This evidence has been turned over to Wade.

Wade attempts to distinguish *Youngblood* from the present case based on the fact that the improperly handled evidence in *Youngblood* was not used in the government's case-in-chief, while here the destroyed evidence is the primary evidence of Wade's alleged crime. The present case is very similar to *Fisher*, with the exception that here, the evidence was only tested once and was only maintained for a year. However, these differences speak more to the flaws of Kalamazoo's evidence destruction policy than to the merits of Wade's claim for dismissal under the law. The fact remains that, as in *Fisher*, the lab results of the substance still exist as evidence, even though the actual substances were destroyed pursuant to police department policy.

**B.    Spoliation Instruction**

A spoliation instruction may generally be predicated on bad faith or bad conduct. *United States v. Wade*, 221 F.3d 140, 156 (5th Cir. 2000). As found, no bad faith or bad conduct was shown at the hearing. But, the Court has determined that it is premature to determine whether to give a spoliation instruction. The Court would prefer to make this decision after it hears all of the evidence and when it determines the instructions that will be given at trial. Therefore, for administrative

reasons, the request for a spoliation instruction will be denied without prejudice with the anticipation that it can be raised again at trial.

### III. Conclusion

Because Wade did not show that the evidence was destroyed in bad faith, the Court will deny Wade's motion to dismiss. Wade's request for a spoliation instruction to the jury is denied without prejudice and will be decided during the trial, when the Court determines the jury instructions which will be given.

An Order consistent with this Opinion will be entered.


Dated: October 26, 2006                                          /s/ Gordon J. Quist
                                                                GORDON J. QUIST
                                                           UNITED STATES DISTRICT JUDGE